Good morning, your honors. Devin Burstein on behalf of the petitioner, Mr. Cuero. Your honors, just as in Santabello, this record represents another example of an unfortunate lapse in the orderly prosecutorial procedures. And since Santabello, that procedure has been clear. When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Here, that didn't happen. Instead, the state breached the plea agreement, going directly to the breach. In the plea agreement, the state promised that in exchange for Mr. Cuero giving up the vast majority of his constitutional rights and pleading guilty, he could receive no more than 14 years and four months. It was a written plea agreement signed by Mr. Cuero, signed by Mr. Cuero's lawyer, signed by the state prosecutor, and signed by the judge. Well, is there anything in California law which prohibits amending a plea agreement before judgment or before the sentence is imposed? Due process under Santabello prohibits not the statutes, so that the government... Well, let's start with the statute. What is permissible under California law? Under 969.5, which is the thrust of the state's argument, if a conviction is not listed on the charging document, it can be amended with permission of the court to include that conviction. Here, not only was the 245 listed, but it's a bit of a misdirection argument, Your Honor, and let me explain to you why. Because the nature of a plea agreement is bargaining away the right to do something that the state or the defendant could otherwise do under the law. You bargain away your right to trial. Exactly. You bargain away your rights... Once judgment is entered, no? No, Your Honor. That would be in the defense context. The defendant would enter into the agreement, the state would come back and be able to get whatever remedies it could get, but in the context of due process under Santabello, once there's a breach, we have different remedies. And this really, I think... Does it make a difference that the state superior court accepted the first plea agreement and all that was to be done was sentencing pursuant to that agreement? It does make a difference in that it helps our case, but even if that hadn't happened, I believe I would still be making the same argument. So what precisely is the breach? Do you contend it's a breach? Is it the state moving to amend after the plea agreement had been accepted? Moving to amend and thereby increasing the maximum sentence beyond the 14 years and four years. Mr. Quirrell wound up with 25 to life because of that. If I could just go back to this 969.5 argument, because it's critical, and this court has ruled on it multiple times. If I could point to the Davis case, and I know Judge Wardlaw, you were on that panel. The Davis case. That case says that the state... That was a case about the the conviction as more than one strike, even though under state law, that was entirely permissible. Even though under state law, it could have counted as more than one strike. The state could have done exactly what it did under the state statutes. But this court held, no, you can't do that. Under Santabello, you can't do that. You've bargained away the right. The state must live with the particular bargain that it made. Mr. Burstein, could you go over with me where these objections were made below, when after the plea was accepted and the state then brought these other charges. What was objected to at that time? The amending of the complaint was objected to by the state prosecutor. They went back and forth, and the state trial defense attorney said, look, you knew about this conviction all along. He has that great colloquy where he says, it's not in a different district. It's not in a different city. It's not even in a different courthouse. You have an ineffective assistance of counsel claim? Were this court to say, look, Mr. Cuero, you didn't properly preserve this? Well, that's what I'm trying to... Did he or didn't he preserve it? He preserved it, I would argue, by making that argument about that the state shouldn't be and this is a big but. There is no requirement that he preserve it below, and I'll point to the en banc case of Buckley, Gunn, and Davis. In Buckley... Let me just... Okay, let's assume it was preserved at the trial court. Okay. What was the next step in California to pursue this? The next step would have been raising it on appeal. Now, there was something like an Anders, whatever the California analog to an Anders brief is, is that right? Yeah, a Wendy brief, Your Honor. And I gather it wasn't raised in that brief? It was raised as the potential issue for the court to consider essentially on its own. And the California Court of Appeal did what? Said, we considered the record and we do not find it to be an arguable issue. And then... That would be right there, would be full stop. That would be the unreasonable application. Under the Supreme Court's list case, it's the one that's, Your Honor, YLST, the Supreme Court makes perfectly clear that when it's been raised on direct appeal, there's no further exhaustion necessary. And if I can make two other points, because it is an important issue. One, the state has not only not argued to the contrary, it has conceded in its state response to the federal habeas petition that these claims were exhausted and not procedurally barred. It barred. It's not just a waiver issue, which would be sufficient because they never raised that in their brief. It's an affirmative concession. What did the magistrate judge say about that? The magistrate judge's decision on this issue is somewhat of a mystery because the magistrate judge's decision somehow concludes there was no promise of 14 years and four months. And I think this is, if I could step back and just speak candidly, some of the problem of having not appointed counsel to pursue pro se habeas petitions. The pro se habeas petition is not the most clearly written document. It does cite Sandoval. It does make multiple breach claims. But for whatever reason, the magistrate judge didn't really reach this issue. And I don't know why. I'm not going to speculate. But if I could go back to Your Honor's question. So we have the state. We have it raised below. But we have the state's affirmative concession about the lack of no procedural bar here. More than that, though, Your Honor, in Buckley, the en banc case, the breach claim wasn't raised until eight years later on state habeas, eight years later. In Gunn, it wasn't raised at the time of sentencing. And in Davis, which I rely on heavily, this breach claim wasn't raised until the habeas before the California Supreme Court. In all of those three, it wasn't raised at all below. Nevertheless, the due process violation was clear, as it is in this case, and the outcome was clear. In each of those decisions, the petition for the great writ was granted. And in several, specific performance was the remedy. I see that I have just under two minutes. I would reserve it. You wish to reserve? I would, Your Honor, unless there's further questions from the panel. You may reserve. Thank you, Your Honor. No questions. Thank you. We'll hear from the state. Good morning, Your Honors. Anthony DiSilva, Deputy Attorney General for Respondent Kate. There was no Santobelo violation, Your Honor, because there was no promise by the state, let alone any breach in the initial plea proceeding. For Santobelo violation to occur, there has to be a promise by the prosecution, which induces entering into a guilty plea and a breach. The plea that came about under established California practice is the pleading to the sheep procedure, which is actually... To the what? It's the pleading to the sheep procedure, Your Honor, which is, it's actually a promise to the court. The defendant pleads guilty to the charges, and then the matter is set for sentencing. Wasn't there a plea agreement? Didn't he plea pursuant to an agreement that he wouldn't be sentenced to more than 14 years and to one single strike? No, Your Honor.  But the plea is actually to the court. The plea form itself states that there are no deals with the people promised, and that is in the excerpt of record at page 14. In fact, during the change of plea hearing, the trial court made it clear that there were no deals with the people. Except that his maximum exposure as this is crafted would be 14 years. At that time, yes, Your Honor. And then he winds up getting 25 to life or something? Does, after the discovery that the assault with a deadly weapon, the 245 was listed as part of one of the prison priors. Okay, but for whatever reason, you didn't find that in time. Even though it was available, I take it. It was not available, Your Honor. The way the record shows, it was initially listed in a complaint as an assault with a deadly weapon. That complaint was later amended to add the personal use of a weapon. When was the prison, what was the date of that prior? The date of the prior was 1992, Your Honor. And when did he plead guilty? I'm sorry, the prior was 1991 or 92, and he pled guilty in 92. And when did he plead guilty in our case? Well, in this case, this guilty plea was in December of 25, yes. So this was around, you just didn't find it? It was now found. Okay, all right. So, I mean, you made a deal with whatever information... Was available at the time, and then it was amended pursuant to state law. Isn't that just the incompetence of the prosecution? No, Your Honor. It's not that simple always to be able to find these priors, and that's the reason why. Why is it not simple to find priors? Because often the packets are in different areas. The probation office sometimes has more information than the prosecution does initially. Well, then you made your deal too soon. You didn't know who you're dealing with. But that's your fault, isn't it? No, Your Honor. And that's why 969.5 exists, to allow amendment once that's discovered, so that the trial court has the full sentencing picture. Why did you not get a representation from him as part of the agreement that these were all the priors that he had? And if it turns out not to be the case, then you can get out of it. Well, Your Honor, he was allowed to withdraw his plea. No, I know. When he wound up, he had no choice. Yes, Your Honor. But again... Can you turn this down a little, Lucy? We're getting some feedback, I think. I'm sorry. Again, Your Honor, and the sketches is whenever that's discovered, and that was done within a month after the guilty plea. So again, there was no promise at that time by the prosecution, let alone no breach. And that statement had to do with what would have been the maximum sentencing exposure at that time. And the plea is not final until it's accepted. What is he giving up all his rights in exchange for? What he gives up his rights in exchange for, once we get the plea, Your Honor, is he was facing 64 years to life under the three-strikes law. What he gave up is he was sentenced only to count one, which was driving under the influence, causing great bodily injury with the previous... To me, it sounds like an agreement. You're going to plead only to count one. You're going to get 14 years in exchange. You give up all these rights. No, Your Honor, there was more than that. And it's that procedure of pleading the sheet. He pled to both counts, which was the driving under the influence. He also pled to being a felon in possession of a firearm. He admitted the great bodily injury and the previous driving under the influence. And he also had before-prison priors, which would have exposed him to more time. And so what he was giving up at that point was going to trial. And the facts were very egregious, and it probably would have led to a maximum sentence. So that's what he gave up, and that's what he was able to do. Upon learning of the additional strikes, it was amended. And there, he got a deal where the second count was dismissed, which would have been an additional 25 years to life. Two serious felony priors were also dismissed, which would have given him 10 more years, plus the four prison priors. So the exposure of 64 to life was bargained at that point with the people in a stipulated 25 years to life sentence. What does the term plead to the sheet mean? I haven't heard that before. That's what it is, Your Honor. It's where the defendant... It's a calculating procedure. Pleads to the court, admitting all the counts, and then determining... All the counts on the sheet in front of him?  Is that the idea? That's what it is, Your Honor. What's the sheet? The sheet is the charging document? The charging document. I'm sorry, Your Honor. Yes, it is exactly that. But there was a plea agreement nonetheless. Is that right? There was a plea to the sheet with the court. Yes. I'm asking you one thing, and you're telling me something else. Was there a plea agreement? With, yes, with the court at that time. The prosecutor doesn't sign it? The prosecutor doesn't. The prosecutor basically then goes into sentencing. And that's why... Again, I'm asking you one thing, and you're telling me something else. Does the prosecutor sign the agreement? I think the prosecutor signs the agreement, and the agreement said that there were no deals with the people. And at the change of plea hearing, again, it was specifically stated by the court there are no deals with the people. And so since there were no deals with the people under that procedure, there was no breach. There was nothing affirmative that was done by the people at that time to create a breach under Santabello. So unless this court has any further questions, or if I have not been clear on the procedure... I have one. There's a motion to strike the 28J letter. I'm rather inclined to grant it. Yes, Your Honor. I haven't decided yet, but I'm inclined to grant it. And I have to ask you, how can you defend a 28J letter referring to a case that's been mentioned several times in your brief? I apologize, Your Honor. What I wanted to do was alert everyone to the statutory legislative history in that, and I do apologize. I wasn't meaning to be discourteous. That's not a proper thing to include in the 28J letter, further argument. And I apologize, this court. I wasn't trying to be discourteous. I was trying to be helpful. Well, not a question of that. It's a question of following the rules. And yes, Your Honor. Very well. Mr. Burstein, you have some reserve time. Thank you, Your Honor. Okay. Number one, this is not a... The idea that there are no deals with the government is disingenuous. And I use that word... But it is a question I have, because it does say STC, no deal with people. The deal with the people is not to recommend a specific sentence. That's why counsel gets to say that. The deal limits... The deal is limiting the maximum exposure. The idea of plead with the sheet, he pled to two counts, not the misdemeanor count. They pled to two counts with no... That thereby limited his possible exposure. That's the nature of the plea deal. Otherwise, as the court noted, he's not getting any bargain. The bargain is the limitation. It's not... What would he be facing if he hadn't made this deal? He was facing, I believe, 30... Wasn't it 64? No, it's... At the time he pled guilty, the first time, what was he facing? The time he pled guilty, I believe it's in the state's brief. I think it's 30... I think the state says 35 to life, but for the plea deal. Plead to the sheet or whatever you want to call it. The bottom line is he was looking at 30, and he worked out an arrangement where he would only get a maximum of 14. That's my understanding, Your Honor. That's what the state says in its brief. And he actually got 25 to life? He got 25 to life because... And the other point I want to make is in my timely filed 28J letter about the Amin case. And the Amin case says exactly what the court was talking to my opponent about, which is the idea that if you can find a fact out, you don't get to void the plea agreement if you're the state. And that's in line with this court's case law as well. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Silverman, Wardlaw